IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FREDDIE L. PUCKETT                                                                           PLAINTIFF

V.                                              NO. 11-5239

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                              DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Freddie L. Puckett, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on September 8, 2009, alleging an inability to work since August 1, 2008, due to "Anxiety, learning disability, TB, and depression." (Tr. 209-210, 214). An administrative hearing was held on March 23, 2011, at which Plaintiff appeared with counsel, and he and his mother and fiancé testified. (Tr. 27-115).

By written decision dated May 27, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - organic

mental disorder, schizophrenic paranoid and other psychotic disorders, affective disorders, and anxiety related disorder. (Tr. 13). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff had the residual functional capacity (RFC) to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: moderately limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, and maintain attention and concentration for extended periods. He is moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the public.

(Tr. 15). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could perform such jobs as cook/helper; dishwasher; and food service worker. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 21, 2011. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

The Court has reviewed the 685 page transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.    Discussion:**

Plaintiff challenges the ALJ's opinion as follows:  1) The ALJ erred in his credibility findings; 2) The ALJ failed to give weight to the GAF's assigned to Plaintiff while seeking treatment at Ozark Guidance Center ("OGC") and Charter Vista; and 3) By ignoring the GAF's, the ALJ failed to properly pose a hypothetical on all relevant and consistent evidence in the record.  (Doc. 8).

    **A.    Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility

is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ, after carefully considering the evidence, found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 16). The ALJ considered the medical records dating as far back as 1999, through 2010. (Tr. 15-19). The ALJ also considered Plaintiff's daily activities. In Plaintiff's Function Report dated October 8, 2009, Plaintiff indicated that he cleaned house; waited for his girlfriend's children and watched them after school while their mother was at work until 10:00 pm; cooked and prepared meals; gave the children baths; took out the trash; drove a car; helped the children with their homework; took them to the park once a week; and could walk about one mile before needing to stop and rest. (Tr. 236-241). The ALJ also noted that in 2004, after starting to take Risperdal and Lexapro, Plaintiff was feeling much better. (Tr. 297). Dr. R.H. Weaver, Plaintiff's treating physician at the time, indicated that although Plaintiff was still depressed, it was not as bad, he was not as angry, and his nerves were doing better. (Tr. 297). Dr. Weaver encouraged Plaintiff to see Dr. Terry Efird, at OGC. (Tr. 298). Plaintiff saw Dr. Weaver three more times in 2004, and the next medical record in the transcript is dated July 5, 2007, when Plaintiff presented himself to Siloam Springs Memorial Hospital with poison ivy. (Tr. 352). In April of 2008, Plaintiff injured his lower back while working at Walmart, but by April 30, 2008, it was resolved, and he was released to work without restrictions. (Tr. 311-313).

A review of the record also indicates that Plaintiff did better while taking medications for his mental impairments, but that he was often non-compliant, either because he ran out of

AO72A
(Rev. 8/82)

medications or because he did not like the side effects. (Tr. 86, 89, 92, 272, 282, 383, 387, 414, 454, 474, 476, 478, 681, 684, 790). An impairment which can be controlled by treatment or medication is not considered disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). Although Plaintiff's fiancé indicated that Plaintiff was supposed to go to OGC three to four times per month, he did not do so because he did not have the money to go. However, the record indicates that Plaintiff continues to afford and smoke about one pack of cigarettes per day, and the Court cannot say that his financial situation prevented him from receiving medical treatment. (Tr. 44, 299, 304).

In addition, as indicated by Defendant, Plaintiff's earning report shows that Plaintiff worked in the first and second quarters of 2009, months after his disability onset date of October 1, 2008. (Tr. 13, 199). He also reported to Donna Copeland at OGC on January 26, 2010, that he had a temporary position and hoped it would become permanent. (Tr. 414). He wanted to get back on his medication because it helped him cope better. (Tr. 414). When a Plaintiff is able to work with the same impairments that made him disabled, it makes Plaintiff's claim regarding his ability to work less than fully credible. See Dodson v. Chater, 101 F.3d 533, 534 (8th Cir. 1996).

The Court finds that there is substantial evidence to support the ALJ's credibility findings.

**B. GAF Scores:**

Plaintiff claims that the ALJ failed to analyze Plaintiff's Global Assessment of Functioning (GAF) scores as evidence of mental status. On the contrary, the ALJ discussed the range of GAF scores given by the different mental health providers, including OGC, and gave

-6-

some weight to the doctors at the OGC, who gave Plaintiff GAF scores ranging from 35 to 59. (Tr. 372, 416, 433, 456, 468, 478, 664, 673, 675, 682, 685). However, the ALJ also considered the GAF scores given by Dr. Richard A. Lloyd, who gave Plaintiff a GAF score of 45 in 1999, upon discharge from Charter Behavioral Health System, and Dr. Terry L. Efird, Ph.D., who gave Plaintiff a GAF score of 50-60 in 2010. (Tr. 283, 390). The ALJ gave great weight to the opinions of the consultative examiner and medical consultants of the State Disability Determination Services. (Tr. 18). Non-examining consultant Kay M. Gale, M.D., completed a Mental RFC Assessment on January 25, 2010, finding that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; complexity of tasks was learned and performed by rote, with few variables, using little judgment, and supervision required was simple, direct and concrete. (Tr. 396). Dr. Gale also completed a Psychiatric Review Technique form, wherein she found no marked limitation of function was described and that Plaintiff seemed capable of routine, repetitive work. (Tr. 410). This assessment was affirmed by Kay Cogbill, M.D., on March 31, 2010. (Tr. 429).

It is also noteworthy that the most recent record from OGC, dated January 19, 2011, indicated that Plaintiff was not compliant with medications or therapy, which could certainly impact the GAF scores given by OGC. (Tr. 684). "[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores where the evidence requires it." Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010). The ALJ noted that Plaintiff had received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in his favor, and that the record also revealed that the treatment had been generally successful in controlling those symptoms. The ALJ's discussion of Plaintiff's GAF scores is consistent

with his observation that Plaintiff experienced an exacerbation in symptoms when he did not take medication and stabilized after he was treated with the proper dosages of medication. See Nishke v. Astrue, ____F.Supp. 2d _____, 2012 WL 2415538 at *22 (E.D. Mo. June 26, 2012).

The Court finds there is substantial evidence to support the weight given to the mental health providers.

### C. Hypothetical Question to VE:

Since the Court finds the ALJ properly addressed the GAF scores, Plaintiff's argument on this issue is unavailing. In addition, as indicated by Defendant, Plaintiff has not challenged the ALJ's RFC finding and has therefore conceded that the RFC finding is correct. Accordingly, since there is substantial evidence to support the ALJ's RFC finding, and the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole, Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005), the Court finds that the VE's responses to the hypothetical questions posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a cook/helper, light exertion level, dishwasher light exertion level, or food service worker, light exertion level. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be

AO72A
(Rev. 8/82)

dismissed with prejudice.

DATED this 17th day of September, 2012.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)